## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| WAYNE-DALTON CORP., | ) | CASE NO. 5:06CV01768 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| AMARR COMPANY, | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

The parties came before the Court on July 12, 2007 for a hearing on the proper construction to be accorded the claims in the subject patent, commonly known as a *Markman* hearing.  *See Markman v. Westview Instr., Inc.*, 517 U.S. 370 (1996).

Following review of the parties' briefs, arguments and the presentation of exhibits, as well as consideration of the legal issues presented by this matter, the Court reaches the conclusions reflected in this Memorandum Opinion and Order.

## *The 872 Patent*

Plaintiff Wayne-Dalton Corp. manufactures and sells garage doors in interstate commerce and is the assignee of Patent Number US 6,640,872 (the "872 Patent"). Wayne-

Dalton is, for purposes of this litigation, the patent holder.  The 872 Patent was issued for a sectional door – typically, a garage door – that provided for a design "whereby a portion of the clearance [between panels] is maintained irrespective of variations in the deflection of the panels in moving between the closed vertical position and the open horizontal position."  *See* Abstract, 872 Patent.  An important goal of the patented design was to eliminate binding between adjacent door panels.

Defendant Amarr Company, likewise, manufactures and sells garage doors in interstate commerce.  Wayne-Dalton filed this complaint against Amarr, alleging patent infringement and false and misleading advertising.  Amarr requested construction of six terms, found in Claims 1 and 25 of the 872 Patent.  Wayne-Dalton contends that the terms do not require construction.[1]

## *Standard of Decision*

At this stage of the proceedings, the Court's task is to examine the terms of the patent claims presented by the parties, identify those that require construction and provide the correct construction of those terms.  Validity, infringement and other ultimate issues are not proper subjects of this Court's present consideration.[2]

> "It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude."  In claim construction, courts examine the patent's intrinsic evidence to define the patented invention's scope.  This intrinsic evidence includes the claims themselves, the specification, and the prosecution history.  Courts give claim terms their ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the entire patent.

---

[1] Although the pages containing Amarr's arguments concerning the fifth and sixth terms were omitted from Amarr's opening claims construction brief, the parties addressed those terms at the *Markman* hearing.  Wayne-Dalton agreed to stand on its arguments on those claims made at that hearing and declined the Court's offer of an opportunity to present additional briefing on those terms.

[2] At the *Markman* hearing, Amarr made – and then withdrew – an oral motion seeking a finding of invalidity of Claim 1 of the patent.  Because Amarr withdrew the motion, it is not before the Court at this time.

*Orion IP, LLC, v. Staples, Inc.*, 406 F. Supp. 2d 717, 722 (E.D. Tex. 2005) (internal citations omitted).  "Although extrinsic evidence can be useful, it is 'less significant than the intrinsic record in determining the legally operative meaning of claim language.'"  *Id.* at 723 (citation omitted).  "Generally speaking, we indulge a 'heavy presumption' that a claim term carries its ordinary and customary meaning." *CCS Fitness, Inc., v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002).  What the Court must consider, though, is the ordinary and customary meaning to a person of ordinary skill in the art at issue as of the time of the invention, rather than the ordinary and customary meaning to a lay person.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005).  Despite Amarr's repeated warnings that the Court "must" construe the claim terms at issue here, the Court's primary goal is to ensure that the language of the claim is intelligible to one ordinarily skilled in the art at the time of the invention – if the language meets this test, it requires no further construction.

In this case, the parties submitted briefs in advance of the hearing, reflecting their respective positions as to first, whether the referenced terms required construction, and then (if so), what that construction should be.  The parties then presented argument and exhibits in a *Markman* hearing.  The Court's conclusions, based on these materials and the applicable law, are enumerated below.  For ease of reference, the Court attaches as Appendix A hereto the specific 872 Patent claims at issue and as Appendix B hereto a chart reflecting the claim terms at issue, the parties' proposed constructions and the Court's determination as to each term.

*Claims Construction – Claims 1 and 25*

Amarr has sought construction on each of the following six claim terms; Wayne-Dalton denies that any of them require construction, but instead argues that each should be given its "ordinary and customary meaning."

**1.    "said lower joint member having a configuration to establish a clearance with the configuration of the upper joint member of an adjacent panel during angular articulation of said adjacent panels" – in Claims 1 and 25**

Amarr's proposed construction of this claim term is: "the lower joint member configured with the upper joint member establishes a clearance along the entire length of the adjacent panels of the door while the adjacent panels are moving at an angle to one another." Amarr's Opening Claims Construction Brief ("Amarr's Opening Brief") (Doc. 89) at 6.

Amarr identified three areas at issue in this term:  first, the use of the word "clearance;" second, whether the clearance is across the entire length of the panel interface; and third, the construction of the phrase "angular articulation."  Transcript of Markman Hearing ("Transcript") at 35.

Amarr stated at the *Markman* hearing that its first issue – the replacement of the word "clearance" with the word "gap" – was moot; Amarr agreed to the use of the word "clearance."  *Id.*

With respect to the placement of the clearance – whether the patent requires clearance across the entire length of the interface between the two panels – Amarr was more insistent.  Amarr's contention is that there must be clearance, a space of some dimension, between each panel of the sectional door; otherwise, Amarr contends, there will be binding, which is one of the evils the patent was intended to address.  Wayne-Dalton argues that Amarr is attempting to read into the claim language a concept that is not only not found within the claim, it is also not found in the specifications or anywhere else in the patent – Amarr's "no-touch" rule would be impossible to enforce as a practical matter, and it is not the scenario the patent was intended to create.  Wayne-Dalton's Response to Amarr's Opening Claims Construction Brief ("Wayne-Dalton's Response Brief") at 7.

Contact between the panels of the sectional door, without more, is not an evil

- 4 -

addressed by the patent, nor is it necessarily an evil at all.  The claims at issue reference establishing a clearance and offsetting the center hinge such that "a portion of said clearance is maintained" in moving between the vertical (closed) and the horizontal (open) positions.  *See* 872 Patent, col. 9, ll. 36-37; col. 12, l. 2.  The amount of the clearance that *must* be maintained is never identified; it is not clear that there is any specific minimal clearance.  Further, the patent simply does not support an interpretation that any such specific minimal clearance must be maintained along the entire length of the adjacent panels.

In its brief, Amarr conflates the notion of "gap" and "clearance," as those terms are used in connection with the notion of a "pinch resistant configuration," with the notion of "clearance," as that term is used in connection with the patent's object keeping adjacent door panels from rubbing and binding.[3]  One example will suffice.  Amarr declares:  "the specification states that 'it is the object of the present invention to provide a sectional door wherein the panel interface maintain a minimal gap during movement . . . which eliminates rubbing and possible binding . . . .'"  Amarr's Opening Brief at 8.  When the language denoted by the ellipses is included, the patent actually says:

> Accordingly, it is an object of the present invention to provide a sectional door wherein the panel interfaces maintain a minimal gap during movement between a closed vertical position and an open horizontal position satisfying pinch resistant specifications. Another object of the present invention is to provide such a sectional door which eliminates rubbing and possible binding between interfaces of adjacent panels even during moving through the curved transition track section between the vertical track section and the horizontal track section.

872 Patent, col. 2, ll. 48-57.  The minimal gap on which Amarr relies relates to "satisfying pinch

---

[3] The 872 Patent references prior inventions relating to the question of pinch-resistance – the notion that a certain maximum clearance or gap between adjacent door panels must not be exceeded, otherwise there is a danger of fingers or skin being pinched as the door panels pivot when the door opens and closes.  872 Patent col. 2, ll. 10-24.  The clearances referenced in the pinch-resistance discussion are not the same as or interchangeable with the clearances referenced in the non-binding discussion.

resistant specifications," not to "rubbing and possible binding."

In fact, nowhere in the subject patent has this Court found language tending to indicate that any specific space, gap or clearance must be maintained along the entire length of the joint between panels, as Amarr suggests, in order to achieve the goals of the invention, which include avoiding rubbing and binding between adjacent panels.[4] Contact between the door panels is not listed as something to be avoided, except in conjunction with rubbing or binding, which is not a necessary adjunct to contact. *See* 872 Patent, col. 1, ll. 13-18 ("More specifically, the present invention relates to a door and method for locating the hinges between panels of such sectional doors to [sic] whereby the adjacent panels do not contact and bind when moving on tracks between the closed vertical position and the open horizontal position."). Amarr's proposed construction on this point does not help to "define the patented invention's scope." *Orion IP*, 406 F. Supp. 2d at 722. As such, it is not a proper construction and this Court will not adopt it.

Amarr's third proposal relates to the asserted need for construction of the language "angular articulation;" this Court likewise believes this language does not require construction.

Amarr offers the alternative language, "while the adjacent panels are moving at an angle to one another," to take the place of the patent's language, "during angular articulation." Amarr's Opening Brief at 9. Amarr offers no very persuasive explanation for why its language is better, clearer or more easily understood than the original claim language. Indeed, Wayne-Dalton contends that Amarr's construction is not merely unnecessary, it is wrong. Wayne-Dalton's Response Brief at 7. Amarr has not even attempted to overcome the "heavy

---

[4] Indeed, Amarr concedes that the patent does not establish "clearance" as relating to any unit of measurement of distance between panels. *See* Transcript at 104.

presumption" in favor of the claim language carrying its ordinary and customary meaning, which to this Court seems reasonably clear. *See CCS Fitness*, 288 F.3d at 1366. No construction of this element of the claim term is required.

The language of the claim term at issue requires no construction. It will be accorded its ordinary and customary meaning.

**2.     "proximate the longitudinal ends of said panels" – Claims 1 and 25**

Amarr contends that this term should be construed as, "very near the right and left ends of the panels." Amarr's Opening Brief at 11. Wayne-Dalton declares that it requires no construction. *See* Transcript at 110.

With respect to the term "proximate," Amarr argues that "the jury won't understand that term to mean right at or very near or near, if the court doesn't give direction." Transcript at 111. Amarr therefore seeks the construction "very near" for that term. Wayne-Dalton, on the other hand, contends that it is entitled to all consistent meanings of the term "proximate." Wayne-Dalton is correct.

A court construing claim terms may not unduly limit its reading of those terms. *TI Group Auto. Sys. (N. Am.), Inc., v. VDO N. Am., L.L.C.*, 375 F.3d 1126, 1136 (Fed. Cir. 2004). Rather, "a patentee is entitled to a definition that encompasses all consistent meanings" of the term. *Id.* "All consistent meanings" of the term "proximate" include more than "very near," or even "near." In the absence of an express statement in the 872 Patent that "proximate" bears the constricted meaning Amarr proposes, the requested limitation is not proper. The term "proximate" therefore does not require construction.

Amarr's effort to construe "longitudinal ends" to mean "the right and left ends of the panels" also must fail, as it seems more likely to add confusion than to remove it. Whether any given end is the right end or the left end depends on the viewer's position in relation to the

door. The meaning of "longitudinal ends" is not similarly variable. Further, the parties do not dispute what is meant by "longitudinal ends." Once the first expert takes the stand, if there was any confusion to begin with (which this Court doubts), the jury will know what is meant by "longitudinal ends." The disputed language does not require construction.

**3.     "connecting said adjacent panels at a first pivot axis, and at least one center hinge assembly connecting said adjacent panels at a second pivot axis offset from said first pivot axis" – Claim 1**

Amarr's proposed construction is: "the pivot axis of at least one center hinge is located vertically below the pivot axis of the end hinges when the adjacent panels are in the vertical, or closed, position." Amarr's Opening Brief at 11.

The thrust of Amarr's proposed construction of this claim term is that it contends that "offset" should be read to mean "located vertically below." Amarr contends that this limitation is found in the specification and therefore limits the meaning of the term "offset" to mean "located vertically below." Wayne-Dalton not only disagrees, but notes that Amarr's proposed construction reads into Claim 1 an element of dependent Claim 3, rendering Claim 3 "superfluous and redundant," which is not permitted. Transcript at 134; *see also* Wayne-Dalton's Response Brief at 10.

> This dispute points up one of the stickier areas of claims construction law:
>
> On the one hand, claims "must be read in view of the specification, of which they are a part." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370, 134 L.Ed. 2d 577, 116 S. Ct. 1384 (1996). On the other hand, it is improper to read a limitation from the specification into the claims. . . . "The problem is to interpret claims 'in view of the specification' without unnecessarily importing limitations from the specification into the claims." *E-Pass Techs., Inc. v. 3COM Corp.*, 343 F.3d 1364, 1369 (Fed. Cir. 2003); *accord Tex. Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1204-05 (Fed. Cir. 2002).

*Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 904-05 (Fed. Cir. 2004).

In *Acumed LLC v. Stryker Corp.*, 483 F.3d 800 (Fed. Cir. 2007), the court faced a similar situation, in which the party seeking construction argued that the language "transverse holes" in a claim should be construed as holes "perpendicular" to the nail shaft, because every description of the transverse holes in the patent contemplated a perpendicular hole and because the figure depicting the nail reflected a perpendicular hole. *Id.* at 807. The Federal Circuit declined to so limit the claim language, however, declaring that "[t]he plain meaning of Claim 1 covers more than the particular embodiment shown in the figures." *Id.* The court explained that:

> The intrinsic evidence of the specification therefore suggests that the patentees knew how to restrict their claim coverage to holes passing through at right angles. They could have used the word "perpendicular," as they did in discussing their preferred embodiment. Instead, they chose a different term that implies a broader scope.

*Id.*

Similarly, here, the 872 Patent reflects that the patentee knew how to restrict the claim coverage to a pivot axis that is "offset vertically below" rather than merely "offset," because the more restrictive language is used in the specification, in description of the preferred embodiment and in Claim 3, which is dependent on Claim 1. Amarr has cited to nothing, however, tending to persuade the Court to abandon the general principle that "Even when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using 'words or expressions of manifest exclusion or restriction.' *Teleflex[, Inc. v. Ficosa N. Am. Corp.*], 299 F.3d [1313] at 1327 [Fed. Cir. 2002]." *Liebel-Flarsheim Co.*, 358 F.3d at 906; *see also Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) (stating that the Federal Circuit has "expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment.").

Under this precedent, Amarr's argument fails.

The referenced language will be accorded its ordinary and customary meaning to one skilled in the art and the proposed limitation on the language will not be added.

**4.     "a portion of said clearance is maintained irrespective of variations in the deflection of said panels" – Claims 1 and 25**

Amarr's proposed construction is: "some of the clearance is maintained along the entire length of the adjacent panels when one of those panels is deflecting or sagging differently than the other."  Amarr's Opening Brief at 15.

Amarr identifies three areas of dispute in this claim term:  whether "clearance" and "gap" have the same meaning; whether some portion of clearance must be maintained along the entire length of the panels; and whether "deflection" properly references both situations where the panels are deflecting differently from one another and situations where they are deflecting similarly.  Transcript at 92-93.

As discussed *infra*, Amarr conceded at the *Markman* hearing that "clearance" could be used in place of Amarr's preferred "gap."  *See* Transcript at 35.

This Court addressed *infra* Amarr's argument concerning the notion of a particular clearance being necessary along the entire joint between two panels in its discussion of the first claim term at issue, and will not further address it here, except to say that Amarr's proposed construction constitutes an unnecessary limitation on the meaning of the claim term and it will not be accepted.

Amarr's concern regarding the word "deflection" is misplaced.  It is particularly difficult for this Court to accept Amarr's contention that the word is improper when a variant of it – "deflecting" – is found in Amarr's own proposed construction.  Amarr's proposal to add the word "sagging" is equally unavailing, given that Amarr merely contends that "deflection is a

technical term . . . sagging is something that would be much easier for the jury to understand." Transcript at 99. Wayne-Dalton pointed out that "deflection," as used in this claim term, is not limited to sagging – although that can be a form of deflection – and the term therefore should not be so limited; Wayne-Dalton further noted that deflection *vis a vis* other panels is not the only possible form of deflection referenced in this term, and Amarr's attempted limitation on that point should not succeed. Transcript at 106-07.

In considering the terms that have gone to a jury without construction in patent litigation, this Court is not even remotely persuaded that the word "deflection" is beyond the jury's capacity to understand, nor is the Court inclined to limit its meaning here to "sagging," as Amarr proposes. Further, Amarr's proposed construction of "variations in the deflection of said panels" as "when one of those panels is deflecting or sagging differently than the other" is unduly limited. As noted in section 3 of this Memorandum Opinion and Order, it is plain that the patentee of the 872 Patent knew how to so restrict the meaning of "deflection," in that various forms of the word "sag" appear throughout the specification and in other claims. *See Acumed*, 483 F.3d at 807. The fact that the patentee chose not to do so here is significant and should not be disregarded in the absence of clear evidence that the intent was to so limit the language of this term. Amarr has offered no such clear evidence; and the inference it seeks will not be made.

The language of the claim term at issue requires no construction. It will be accorded its ordinary and customary meaning.

**5.    "hinge means" – Claim 25**

At the *Markman* hearing, the parties agreed – and this Court ruled – that this term shall be construed to mean "hinge." Transcript at 159.

**6. "connecting said adjacent panels at a first pivot axis, and center hinge means connecting said adjacent panels at a second pivot axis offset from said first pivot axis" – Claim 25**

Amarr proposes the following construction for this term: "the pivot axis of at least one center hinge is located vertically below the pivot axis of the end hinges when the adjacent panels are in the vertical, or closed, position." Amarr's Opening Brief at 19. Wayne-Dalton contends no construction is necessary.

In favor of its proposed construction, Amarr refers the Court to its arguments with respect to the third claim term at issue, above, and makes no different arguments with respect to this claim term. *See* Amarr's Opening Brief at 19; Transcript at 7. For the reasons stated in section 3 of this Memorandum Opinion and Order regarding the third claim term, the referenced language will be accorded its ordinary and customary meaning to one skilled in the art and the proposed limitation on the language will not be added.

## *Conclusion*

The terms as to which construction has been requested are to be construed as reflected in this Memorandum Opinion and Order and the attached Appendices, incorporated by reference herein.

**IT IS SO ORDERED.**

Dated:  September 5, 2007                                   *s/  Sara Lioi*
                                                            **HONORABLE SARA LIOI**
                                                            **UNITED STATES DISTRICT JUDGE**