**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| WAYNE-DALTON CORP., | ) | CASE NO.  5:06CV01768 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| AMARR COMPANY, | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

This matter comes before the Court upon the motion of Plaintiff Wayne-Dalton Corp. ("Wayne-Dalton") for reconsideration of the Court's January 23, 2008, opinion granting Defendant Amarr Company ("Amarr")'s motion for summary judgment as to Wayne-Dalton's ability to recover damages on its false advertising claim. (Doc. No. 156.) For the reasons that follow, Wayne-Dalton's motion for reconsideration is hereby **DENIED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts surrounding this case are set forth in the Court's January 23, 2008 Memorandum Opinion and Order, and will not be reiterated in detail herein. Wayne-Dalton and Amarr both manufacture garage doors. Both are members of the Door and Access Systems Manufacturers Association ("DASMA"). DASMA adopts voluntary safety standards "as a guide to aid the manufacturer, the consumer and the general public." (Standard for Section Interfaces on Residential Garage Door Systems, Doc. 134, Ex. C, Ex. 2.) One such standard, DASMA 116, attempts to test whether a garage door is "pinch resistant" by testing whether a "finger probe" is likely to be pinched by the garage door as the door moves on its track.

1

Wayne-Dalton brought a claim for false advertisement in violation of 15 U.S.C. § 1125. Wayne-Dalton contended that Amarr falsely advertised Amarr's doors as "pinch resistant." The Court granted Amarr's motion for summary judgment on Wayne-Dalton's claim for damages because Wayne-Dalton failed to offer any evidence of actual consumer deception and because the claim was barred by the doctrine of laches. Wayne-Dalton argued that it was not required to provide such evidence of actual deception because Amarr's advertisements, in Wayne-Dalton's view, were literally false.[1] The Court found, pursuant to prevailing Sixth Circuit authority, that claiming the doors were "pinch resistant" was ambiguous as a matter of law, and, therefore, incapable of literal falsity. Accordingly, because Wayne-Dalton admitted that it had no evidence of actual consumer deception, the Court granted Amarr's motion for summary judgment on Wayne-Dalton's ability to recover damages for false advertising. The Court also found that Wayne-Dalton had constructive knowledge of the alleged false advertising over two years prior to filing suit and could not sustain the accompanying burden of persuading the Court that laches did not bar the claim. Wayne-Dalton now moves for reconsideration of the Court's decision.

## II. STANDARD OF REVIEW

The Federal Rules of Civil Procedure do not provide for motions for reconsideration. Nonetheless, district courts have "inherent powers to reconsider interlocutory orders and reopen a part of a case before entry of a final judgment." *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991). Motions for reconsideration are not substitutes for appeals nor are they vehicles whereby a party may present arguments inexcusably omitted in prior proceedings.

---

[1] The Court notes that, even if the Court had found that Amarr's advertisements were capable of literal falsity, it is not at all clear that Wayne-Dalton would be able to defeat summary judgment on its claim for damages. *See Balance Dynamics Corp. v. Schmitt Industries*, 204 F.3d 683, 694 (6th Cir. 2000) (rejecting claim for marketplace damages based purely on literal falsity of advertisement and explaining that "[t]he 'literal falsity' rule has never permitted a plaintiff to recover marketplace damages without other proof that such damages occurred").

*Karr v. Castle*, 768 F. Supp. 1087, 1093 (D. Del. 1991), *citing Brambles U.S.A., Inc. v. Blocker*, 735 F. Supp. 1239, 1240-41 (D. Del. 1990). "The major grounds justifying reconsideration of interlocutory orders are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Reich v. Hall Holding Co.*, 990 F. Supp. 955, 965 (N.D. Ohio 1998), *citing Petition of United States Steel Corp.*, 479 F.2d 489, 494 (6th Cir. 1973). The motion for reconsideration must demonstrate to the Court why it should reconsider its decision and set forth strongly convincing facts or law which would induce it to reverse its prior holding. *Shields v. Shetler*, 120 F.R.D. 123, 126 (D. Colo. 1988). A motion for reconsideration that presents no arguments that have not already been raised should be denied. *See Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir. 1985); *Cover v. Wal-Mart Stores, Inc.*, 148 F.R.D. 294, 295 (M.D. Fla. 1993).

### III. LAW AND ANALYSIS

Wayne-Dalton first argues that the Court misconstrued its argument as to the meaning of "pinch resistant." Wayne-Dalton now claims that DASMA 116 "is not the advertising phrase in issue, but merely a tool that the trier of fact can use to determine whether the term 'pinch resistant' is literally false." (Mot. for Recons. 4.) Wayne-Dalton's repeated references to "pinch-resistant" meaning "DASMA 116-compliant" throughout this litigation belie any such assertion. These references are well documented in Amarr's opposition to the motion for reconsideration (Doc. No. 161), but the Court specifically notes some of the particularly clear examples:

1. Wayne-Dalton's complaint alleges that Amarr's advertisement "communicates to consumers that at least the 'Weatherguard,' 'Classica,' 'Heritage,' and 'Stratford' brand garage doors made and sold by Amarr, and the 'private label' garage doors

3

     made by Amarr and sold by others, comply with Standard 116 of DASMA relating to pinch-resistant construction." (Doc. No. 1, ¶ 24.)

2. Wayne-Dalton's memorandum in support of its motion for preliminary injunction states, "In a society that has become increasingly safety conscious, the demand for pinch resistant doors, or those complying with DASMA 116, have increased significantly." (Doc. No. 10, 3.)

3. Wayne-Dalton's memorandum in support of its motion for preliminary injunction also explains, "John Scates, a member of the Technical Committee that developed DASMA Standard 116 (Scates Declaration, Par. 5), sets forth in his Declaration with attached exhibits, the requirements for a garage door to be considered "pinch resistant" and thereby to be one that "conforms to the requirements of DASMA 116." (*Id*. at 15.)

4. Wayne-Dalton's motion for summary judgment claims, "DASMA 116 sets out the standard for a 'pinch resistant' garage door." (Ptf.'s Mot. for Summ. J., 5.)

     Indeed, Wayne-Dalton submitted multiple affidavits to support its claim that "pinch resistant" means DASMA 116-compliant. *See* (Bennett Dec., Doc. No. 10, ¶ 14); (Scates Dec., Doc. No. 10, ¶ 6.) Wayne-Dalton repeatedly argued that a trier of fact could discern that Amarr's doors were not pinch resistant because they allegedly failed to comply with DASMA 116. It now argues that it can remedy the ambiguity in the term "pinch resistant" by withdrawing the only definition it offered for the phrase. Such after-the-fact arguments are not appropriate for a motion for reconsideration, and, again, are belied by Wayne-Dalton's repeated insistence that pinch resistance equated to DASMA 116 compliance. Accordingly, the Court finds Wayne-Dalton's claim that the Court misconstrued its argument unpersuasive.

Wayne-Dalton also argues that the Court should have left the determination of the clarity of "pinch resistant" to a jury. Wayne-Dalton argues that the "term 'pinch resistant' has a connotation of its own that is capable of determination by a jury," and on that basis the Court should have denied Amarr's motion for summary judgment. (Doc. 164, 2.) It similarly argues that the Court should reconsider its decision because the issue of whether DASMA 116 is ambiguous is one for the jury. These arguments disregard Sixth Circuit precedent which explains that, in analyzing a false advertising claim, a Court must first determine whether the statements at issue *may be* determined literally false before submitting them to the factfinder to determine whether they *are* literally false in light of the facts of the case. *See Podiatric Physicians*, 185 F.3d at 615 n.2 ("[T]he initial determination concerning whether a statement is ambiguous is a matter of law, while the determination as to whether facts exist so as to justify the statement is a question of fact."). The question of the ambiguity of the statements is one of law, for the Court to decide. This Court thus performed its judicial duty -- deciding matters of law -- when it found that the statements at issue in this case and DASMA 116 itself, like the many statements found ambiguous in *Podiatric Physicians*, are ambiguous as a matter of law. *See Podiatric Physicians*, 185 F.3d at 616 (finding ambiguous the claim that a medical board is "professionally recognized" and asking, "To be 'professionally recognized,' must the [board] be recognized by most podiatrists? Most people in the medical profession? Some podiatrists?").[2]

Wayne-Dalton also offers the newly adopted DASMA standard as new evidence that should, in its view, warrant the Court's reconsideration of the summary judgment decision.

---

[2] Indeed, as Wayne-Dalton appears to now concede that "pinch resistant" does not necessarily mean "DASMA 116-compliant," it is not clear how a jury could determine whether a door was literally "pinch resistant." What does it mean to "resist" pinching? Must a door "resist" pinching both adults' fingers and childrens' fingers? Only fingers but not shirt sleeves? Is the door "pinch resistant" because it avoids *being* pinched due to its flat panels? Wayne-Dalton has no answer for these questions and instead believes that the Court must leave the issue for the jury to discern. This claim disregards the Sixth Circuit's approach to literal falsity in *Podiatric Physicians*, and fails as a matter of law.

DASMA has apparently preliminarily adopted a new DASMA 116 standard. This new standard includes a clarification of what it means to "admit" a finger probe into the pinch point areas between the section interfaces of a garage door. The definition of "admit" also clarifies, via a convenient graphic illustration, the reference plane to be used when conducting the test. This new evidence only further supports the Court's conclusion that the prior DASMA 116 test, to which Amarr's doors were to be subjected under Wayne-Dalton's claim, was ambiguous.[3]

Accordingly, the Court finds that its prior decision granting summary judgment due to a lack of evidence of actual consumer deception was not a manifest injustice or clear error. Indeed, it was compelled by an extensive review of the briefs, the evidence of record, and the relevant case law.[4]

Wayne-Dalton also argues for reconsideration because the Court issued its decision on the motions for summary judgment prior to holding the oral argument the Court had scheduled. The Court did originally schedule an oral argument on the motion for summary judgment regarding Amarr's laches argument (Minutes of October 10, 2007 telephone conference), and then rescheduled it to address all of the pending motions for summary judgment. (Doc. Nos. 135 & 152.)

Local Rule 7.2(b) provides, "In those cases in which a summary judgment motion is pending, the Judicial Officer may consider scheduling the case for oral argument." The rule

---

[3] Wayne-Dalton also argues that new evidence in the record, a lawsuit filed in New York alleging that a woman's fingers were injured by a door made by Amarr, warrants reconsideration by this Court. Nothing has been proven in that suit yet, and even if it was proven, it does nothing to advance Wayne-Dalton's claims in this case.

[4] Even after Wayne-Dalton has had two more bites at the proverbial apple via its motion for reconsideration and reply (in which it has now attempted to retreat from the argument it made consistently throughout this litigation that a door's pinch resistance is measured by its compliance with DASMA 116), it still has yet to provide a clear definition for "pinch resistant." Merely arguing that the Court should view the "entire mosaic" of Amarr's advertisements with no regard for whether such advertisements convey a clear message capable of an objective determination of literal falsity is insufficient under Sixth Circuit precedent. *See Podiatric Physicians*, 185 F.3d at 614-616 (evaluating each individual statement in a letter to determine whether it is capable of actual falsity and requiring evidence of actual deception where even one clause of a sentence was ambiguous).

provides the Court with appropriate discretion to hear or not hear oral argument regarding dispositive motions. *See also Schentur v. United* States, 1993 U.S. App. LEXIS 22060, at *15 (6th Cir. 1993) (affirming that "district courts may dispense with oral argument on motions for any number of sound judicial reasons"); *Yamaha Corp. v. Stonecipher's Baldwin*, 975 F.2d 300 (6th Cir. 1992) (the Federal Rules of Civil Procedure and Sixth Circuit precedent support the legitimacy of local rules that vest courts with discretion regarding oral argument on dispositive motions).

In its discretion, the Court chose to forego the benefit of oral argument and decide the motions upon the briefs themselves. Notably, the scheduled event was an oral argument, not an evidentiary hearing or other opportunity to submit evidence other than what had already been provided in the nine (9) briefs the parties submitted regarding summary judgment on the false advertising claim (in addition to the three (3) previously filed briefs regarding Wayne-Dalton's motion for a preliminary injunction). The Court acknowledges that it could have explicitly stated in its Memorandum Opinion and Order that it had chosen to decide the motions without the benefit of oral argument. The Court was not, however, required to do so. In addition, Wayne-Dalton could not possibly have "relied upon" the scheduling of the argument, as it claims, because it was able to exhaustively brief the issues and submit all of its evidence regarding the false advertising claim.[5] Nor, as Wayne-Dalton contends without any authority to support its argument, is holding an oral argument required in order to allow Wayne-Dalton to "perfect the record for appeal." Wayne-Dalton was given the opportunity to, and in fact did, make over 100

---

[5] Wayne-Dalton submitted each of the following briefs with evidence and argument on the motions for summary judgment regarding the false advertising claim: Opposition to motion for summary judgment (Doc. No. 58); Motion for summary judgment on the issue of Amarr's liability for literal false advertising (Doc. No. 134); Opposition to motion for summary judgment (Doc. No. 139); and Reply (Doc. No. 146). These were in addition to Wayne-Dalton's two briefs with evidence regarding its motion for a preliminary injunction. *See* Brief in Support of Motion for preliminary injunction (Doc. No. 10); Reply brief to Amarr's brief in opposition to plaintiff's motion for preliminary injunction (Doc. No. 42).

pages of argument on this single cause of action prior to the Court rendering its summary judgment opinion.[6] The oral argument was scheduled merely as a benefit to the Court should it, in its discretion, decide to hear such argument. Accordingly, the Court finds Wayne-Dalton's argument unavailing.

Finally, Wayne-Dalton argues that the Court should reconsider its decision that the false advertising claim is also precluded by the doctrine of laches. The Court found that Wayne-Dalton had constructive knowledge of the alleged false advertising over two years prior to filing this suit, and could not overcome the presumption that laches barred its claim. Wayne-Dalton makes the same two arguments in the motion for reconsideration that the Court rejected in its summary judgment opinion.[7] Because Wayne-Dalton simply rehashes arguments the Court previously rejected, denial of the motion for reconsideration on this ground is appropriate. *See Backlund*, 778 F.2d at 1388; *Cover*, 148 F.R.D. at 295. The evidence Wayne-Dalton cites in support of its motion for reconsideration was considered in the Court's January 23, 2008 Memorandum Opinion and Order, so it is not "new evidence" which would warrant reconsideration. Wayne-Dalton also has not shown that the Court's decision was a manifest injustice or clear error. It has thus failed to show that this Court should reconsider its prior decision.

---

[6] The Court again reiterates that it scheduled an oral argument, not an evidentiary hearing, so Wayne-Dalton knew it would not be permitted to submit further evidence into the record at the oral argument.

[7] Wayne-Dalton first claims that it had no actual knowledge of Amarr's false advertising prior to July of 2004. This argument, as the Court explained in the January 23, 2008 Memorandum Opinion and Order disregards the fact that constructive knowledge may support a finding of laches. *See Nartron Corp. v. ST Microelectronics Inc.*, 305 F.3d 397, 408 (6th Cir. 2002). *See also Comerica Bank v. Suburban Trust & Sav. Bank*, No. 95-1551, 1996 U.S. App. LEXIS 26778, *20 (6th Cir. Oct. 10, 1996) (Constructive knowledge is "imputed when one by exercise of reasonable care would have known a fact."). Wayne-Dalton's second argument is that Amarr changed the design of its doors between 1999, when Wayne-Dalton had first found Amarr's doors in compliance with DASMA 116, and 2005, when Wayne-Dalton allegedly learned for the first time of the false advertising. According to Wayne-Dalton, this alleged change provides an excuse for failing to timely bring suit. The evidence Wayne-Dalton cites to support this argument is an Amarr advertisement with a copyright date of 2003, which does nothing to aid Wayne-Dalton's argument that it did not have constructive knowledge prior to July of 2004. Thus, as it did in its summary judgment opinion, the Court finds Wayne-Dalton's argument unpersuasive.

## IV. CONCLUSION

Ultimately, Wayne-Dalton failed to secure evidence of actual consumer deception to support its false advertising claim, and it exhibited an inequitable delay in bringing the claim. It has not demonstrated to the Court that the January 23, 2008 decision should be altered. As such, Wayne-Dalton's motion for reconsideration (Doc. No. 157) is hereby **DENIED**.

**IT IS SO ORDERED.**

Dated: April 29, 2008

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**