UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WAYNE-DALTON CORP., | ) | CASE NO.  5:06CV01768 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| AMARR COMPANY, | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

**I. FACTUAL AND PROCEDURAL BACKGROUND**

The facts surrounding this case are set forth in the Court's January 23, 2008, Memorandum Opinion and Order, familiarity with which is assumed. Wayne-Dalton and Amarr both manufacture garage doors. Wayne-Dalton brought a claim for false advertisement in violation of 15 U.S.C. § 1125, contending that Amarr falsely advertised Amarr's doors as "pinch resistant," and sought both damages and injunctive relief. The Court granted Amarr's motion for summary judgment on Wayne-Dalton's claim for damages because Wayne-Dalton failed to offer any evidence of actual consumer deception and because the claim was barred by the doctrine of laches. (Doc. No. 156.) The Court, however, did not grant summary judgment on Wayne-Dalton's claim for injunctive relief, finding that laches does not bar such a claim under Sixth Circuit law. (*Id.* at 15, citing *Nartron Corp. v. STMicroelectronics*, 305 F.3d 397, 412 (6th Cir. 2002)).  Subsequent to the ruling, the Court instructed the parties to meet and confer regarding the claim for injunctive relief, with an eye toward resolution of the claim. Unable to resolve the issue, the parties filed a joint status report advising the Court that neither party believed a hearing would be worth the delay, expense and judicial effort that would be required, and suggested that

they be permitted to file simultaneous briefs addressing the propriety of injunctive relief. The Court granted this request, and now considers the briefs as cross-motions for summary judgment.[1]

## II. STANDARD OF REVIEW

This Court's analysis of the motion for summary judgment is governed by Rule 56(c) of the Federal Rules of Civil Procedure:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

*Id.* The party opposing a motion for summary judgment made according to Rule 56 "may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

The entry of summary judgment is not a disfavored procedural shortcut, but instead is mandated by "the plain language of Rule 56(c) [. . .] after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party opposing a motion for summary judgment may do so with "any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Id.* at 324. The nonmovant must show more than a scintilla of evidence to overcome summary judgment. *Matushita Elec. Indus. Co. v.*

---

[1] Wayne-Dalton has filed a motion to strike Amarr's opposition to the issuance of an injunction. (Doc. No. 176.) Because the motion and reply in support of the motion (Doc. No. 180) appear to be an unnecessary and inappropriate attempt to file two more briefs (beyond the at least 12 previously filed) regarding the merits of this claim and to hurl unwarranted and inflammatory accusations at Amarr and its counsel, the Court hereby DENIES the motion. Furthermore, the Court will not consider the arguments contained within the motion and reply to the extent they provide further argument regarding the merits of the claim for injunctive relief.

*Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the nonmoving party "must present significant probative evidence in support of its complaint to defeat the motion for summary judgment." *Moore v. Philip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993). In addition, the movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex,* 477 U.S. at 322.

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *White v. Turfway Park Racing Ass'n*, 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252. A non-movant is not permitted to rest upon the allegations in the complaint, but must produce affirmative evidence in support of each and every element of each claim. *Id*. at 150. In light of this standard, the Court considers Defendant's dispositive motion.

### III.  LAW AND ANALYSIS

In order to show it is entitled to a permanent injunction, Wayne-Dalton must demonstrate (1) that it succeeds on the merits of its claim and has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between Wayne-Dalton and Amarr, a

remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). An evidentiary hearing is ordinarily required prior to the issuance of a permanent injunction, *United States v. McGee*, 714 F.2d 607, 613 (6th Cir. 1983), unless no factual issues remain for trial. *Moltan Co. v. Eagle-Picher Indus.*, 55 F.3d 1171, 1174 (6th Cir. Tenn. 1995). The decision to grant or deny a permanent injunction is within the Court's discretion and demands consideration of traditional principals of equity. *eBay*, 547 U.S. at 394; *Podiatric Physicians*, 185 F.3d at 618.

### 1. Wayne-Dalton's Claim for False Advertising Fails on the Merits

Wayne-Dalton's claim for false advertising arises under 15 U.S.C. § 1125, enacted as part of the Lanham Act. The statute provides, in relevant part:

> (a)(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or fase or misleading representation of fact, which—
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities
>
> Shall be liable in a civil action by any person who believes that he or she is or is likely to be damages by such act.

15 U.S.C. § 1125(a)(1) & (a)(1)(B) (1994).

The Sixth Circuit has set forth five elements that Wayne-Dalton must establish to prove its claim for injunctive relief: (1) Amarr made a misleading statement of fact concerning its product; (2) the statement tends to deceive a substantial portion of the intended audience; (3) the statement is material in that it will likely influence the deceived consumer's purchasing decisions; (4) the advertisements were introduced into interstate commerce; and (5) there is some

causal link between the challenged statements and harm to Wayne-Dalton.[2] *American Council of Certified Podiatric Physicians and Surgeons v. American Board of Podiatric Surgery, Inc.*, 185 F.3d 606, 613 (6th Cir. 1999) (hereinafter "Podiatric Physicians"); *Balance Dynamics v. Schmitt*, 204 F.3d 683, 690 (6th Cir. 2000).

### a. The Powerpoint Presentation Advertising Doors as "Pinch Resistant" Was Not Misleading

The principal advertisement Wayne-Dalton claims was false was contained within a powerpoint presentation Amarr presented to Lowe's. On four different pages of this approximately 65 page presentation, Amarr represented that its line of garage doors is "pinch resistant."[3] In a previous opinion, this Court found that the advertisement of Amarr's doors as "pinch resistant" is ambiguous and thus incapable of literal falsity. To obtain the injunctive relief it now seeks, Wayne-Dalton must show that the "advertisement" (to the extent four slides of a powerpoint presentation can be considered an advertisement) is misleading. *Podiatric Physicians*, 185 F.3d at 613. "Consumer reaction is determinative where an advertisement is

---

[2] Unlike a claim for injunctive relief, a claim for damages requires a plaintiff to show actual consumer deception where no literal falsity is shown. *Balance Dynamics*, 204 F.3d at 690, 693-94.

[3] Wayne-Dalton attaches to its brief some advertisements Lowe's allegedly published describing the Reliabuilt doors as containing "child-safe finger-protecting door panels." Wayne-Dalton has not, however, sued Lowe's for false advertising as to these advertisements and does not appear to argue that Amarr should be liable for the advertisements of every entity which buys and resells Amarr doors. Instead, Wayne-Dalton's alleged harm is Lowe's decision to purchase Amarr doors instead of Wayne-Dalton doors. Regardless, no causal link can be shown between Lowe's own advertisements and its decision to purchase Amarr's doors where the advertisements were published after Lowe's made its decision. Nor can such after-the-fact evidence illustrate a tendency to deceive Lowe's. Moreover, these advertisements do not alter the Court's conclusion that Amarr's advertisements indicating that its doors were "pinch resistant" meant that they were safer than traditional garage doors with regard to finger/hand pinching, though not necessarily pinch proof. Without evidence or testimony from Lowe's, any link between how Lowe's currently advertises its doors and the meaning Amarr advertisements conveyed in 2006 is speculative at best.

5

ambiguous and, hence, only potentially misleading."[4] *Castrol, Inc. v. Pennzoil Co.*, 987 F.2d 939, 947 (3d Cir. 1993).

In support of its claim, Wayne-Dalton submits pictures of a woman inserting the tips of her fingers between the section interfaces of an Amarr garage door. Thus, to succeed on its claim that the advertisement of the doors as "pinch resistant" was misleading, Wayne-Dalton must establish a genuine issue of material fact as to whether "pinch resistant" conveys to customers that the doors will never allow a person to insert the tips of her fingers between the panels of the door. *Podiatric Physicians*, 185 F.3d 606 at 615 n.2 (in deciding if an advertisement is misleading, a court must determine what message the advertisement conveys, and then look to the facts to determine whether a genuine issue exists as to whether that message is misleading); *U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*, 898 F.2d 914, 922 (3d Cir.) *cert. denied*, 498 U.S. 816 (1990); *Iams Co. v. Kal Kan Foods*, No. C-3-97-449, 1998 U.S. Dist. LEXIS 19217, at *10 (S.D. Ohio March 31, 1997).

The parties dispute the meaning conveyed by the advertisement of a door as "pinch resistant." Amarr submitted affidavits from certain garage door dealers explaining that they understand pinch resistant to mean a door that is safer than a traditional garage door in terms of reducing the risk that an individual could pinch their fingers between the door's panels. (Doc. No. 30, ¶5, Doc. No. 32, ¶ 5.) In addition, Amarr submitted an entry from Wayne-Dalton's

---

[4] The Sixth Circuit's footnote in *Podiatric Physicians* could be interpreted to call for the Court to discern as a matter of law the meaning of an advertisement. *Podiatric Physicians*, 185 F.3d 606 at 615 n2. The Court analogized to contract law, though, in stating that "[w]hether or not a statement is ambiguous would seem to be a question of law, as it is in contract interpretation." *Id.* Several circuits have held that after a court determines that an advertisement is ambiguous, the meaning conveyed becomes a matter of fact. *Clorox Co. v. Proctor & Gamble Commer. Co.*, 228 F.3d 24, 34 (1st Cir. 2000) ("[A] factfinder must determine the claim conveyed by the advertisement."); *Johnson & Johnson v. Smithkline Beecham Corp.*, 960 F.2d 294, 297-98 (2nd Cir. 1992); *Castrol*, 987 F.2d at 947. This is consistent with the Sixth Circuit's analogy to contract law, because determination of whether a contract's language is ambiguous is a matter of law, whereas once a contract has been deemed ambiguous, its meaning becomes a matter of fact. Thus, the Court treats the issue as one of fact, instead of interpreting the Sixth Circuit's footnote in *Podiatric Physicians* to place the circuit in conflict with multiple other circuits. Nevertheless, even if the Court viewed the issue as one of law, its holding would not change because the words "pinch resistant" do not facially convey the meaning "pinch proof."

6

website explaining that a pinch resistant door "is engineered to help eliminate injuries caused when fingers are caught in door panel joints during downward opposition. The shape of the contact point between two door panel sections is designed to push fingers away as the door closes, helping prevent fingers from getting caught in the door joint." (Doc. No. 140, Ex. R.)

Wayne-Dalton repeatedly argued throughout this litigation that "pinch resistant" meant that a door complied with the voluntary standard adopted by the Door and Access Systems Manufacturers' Association ("DASMA") known as DASMA 116. Wayne-Dalton submitted an affidavit from its expert, John E. Scates, claiming that "the industry" has defined a pinch-resistant door as one that passes the DASMA 116 test. (Doc. No. 10, Ex. C.) Scates acknowledged at his deposition, however, that he did not know whether consumers, garage door dealers, or retailers like Lowe's and Home Depot would believe "pinch resistant" meant that a door complied with DASMA 116. (*Id*. at 25.) In addition, the Court has already articulated in its prior opinion the reasons why "pinch resistant" does not unambiguously convey "DASMA 116 compliant." (Doc. No. 158.) Wayne-Dalton now argues that the "common sense" meaning of pinch resistant is that the doors do not admit fingers. (Doc. No. 174, 3.)

Both parties have declined to obtain discovery from Lowe's, a customer each party seeks to maintain and neither party wishes to involve in this litigation. Without this testimony from Lowe's, the Court is left to discern what the advertisements conveyed to Amarr customers, specifically Lowe's, based upon the testimony of others and the arguments of counsel. Because neither party has produced evidence of how Lowe's (the party whose interpretation would definitely show whether it was misled or deceived by Amarr's representations) interpreted the advertisements, the only evidence of how consumers interpret the "pinch resistant" advertisements is that of the dealers Amarr presented, each of whom understood "pinch resistant"

7

to mean "safer than traditional garage doors with regard to finger and hand pinching." (Doc. No. 30, ¶5, Doc. No. 32, ¶ 5.) Wayne-Dalton's "common sense definition" is undermined by the testimony of its own engineer, who recognized the difference between "pinch proof" and "pinch resistant." (Doc. No. 140, Ex. T at 229.) Thus, the evidence when viewed in a light most favorable to Wayne-Dalton shows that "pinch resistant" conveyed to Amarr customers, such as Lowe's that the doors were safer than traditional garage doors, but not necessarily pinch proof.[5]

Viewed in a light most favorable to Wayne-Dalton, the evidence in this case shows that the Amarr doors at issue are designed to prevent hand injuries and are less likely to pinch fingers than traditional non-pinch resistant garage doors. (Doc. No. 101, Ex. F; Doc. No. 140, Ex. F at 230; Ex. H at 11-12.) Wayne-Dalton's evidence that a woman, when she intentionally tried to do so, was able to fit the tips of her fingers in between the section interfaces of an Amarr door does not make the advertisements of the doors misleading. Wayne-Dalton's failure to establish a genuine issue of material fact as to whether Amarr's advertisement is misleading provides one distinct basis for rendering summary judgment against Wayne-Dalton on its claim for injunctive relief based upon the "pinch resistant" advertisement.

### a. Wayne-Dalton Has Failed to Show a Tendency to Deceive

In addition to Amarr's powerpoint presentation, Wayne-Dalton also attempts to seek injunctive relief against Amarr for advertisements (1) with pictures that include hands near the seams between two door panels, and (2) that include the phrases "pinch resistant DuraSafe

---

[5] This evidence is not surprising, as the difference between "pinch proof" and "pinch resistant" is illustrated when one considers "water resistant" watches. Consumers do not understand watches labeled "water resistant" watches to be incapable of admitting water. Indeed, if such a watch did so, it would be labeled "water proof." Instead, "water resistant" watches are typically those which are more stringent in admitting water than traditional watches. Likewise, the evidence shows that the advertisements that Amarr's doors are "pinch resistant" convey to consumers that the doors are less likely to pinch fingers and hands than traditional doors. Customers, particularly executives from sophisticated parties like Lowe's, reasonably understand how the difference between the two is facially conveyed by the words' plain meaning, and recognize that just because a door is advertised as "pinch resistant" does not mean that it will never pinch a finger, particularly one that someone intentionally inserts between the panels.

8

technology," "exceed industry standards," "inspired by little things . . . little hands," and "neither fingers nor weather gets in." Wayne-Dalton's injunctive relief claim based upon all of these advertisements fails, however, because its evidence does not establish that Amarr's advertisements have a tendency to deceive customers.

Regarding the "tendency to deceive" requirement, the Sixth Circuit has made clear that "[a]lthough a plaintiff need not present consumer surveys or testimony demonstrating actual consumer deception, it must present evidence of some sort demonstrating that consumers were misled." *Podiatric Physicians*, 185 F.3d at 618 (evidence of confusion not sufficient to show that consumer was "tricked into believing an untruth about plaintiff"). *See also Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc.*, 270 F.3d 298, 323-24 (6th Cir. 2001) (evidence of possible confusion not sufficient to show tendency to deceive).[6]

Wayne-Dalton attempts to sustain its burden to show a tendency to deceive by submitting evidence that in March of 2006, after Lowe's performed a review of its garage door vendors, it elected to begin selling more Amarr doors instead of Wayne-Dalton doors. Without providing any evidentiary support other than the fact of the presentation itself, Wayne-Dalton alleges that Lowe's made this choice based upon the powerpoint presentation Amarr exhibited to Lowe's. As discussed previously, this approximately 65-page presentation which promoted

---

[6] Wayne-Dalton also argues that it offers circumstantial evidence which is sufficient to show a tendency to deceive, and that this evidence should allow the Court to grant summary judgment in Wayne-Dalton's favor. In support of this argument, Wayne-Dalton cites *Max Daetwyler Corp. v. Input Graphics, Inc.*, 608 F. Supp. 1549 (E.D. Penn. 1985). In *Daetwyler*, the court refused to grant summary judgment on the plaintiff's claim for injunctive relief where the plaintiff had failed to submit consumer surveys which proved actual deception. 608 F. Supp. at 1553-54. The court explained that "it may be possible to satisfy a factfinder that consumers have been deceived or are likely to be deceived by means other than a survey." *Id.* at 1553. In addition, the court stated in dicta that "there may be a basis upon which a plaintiff may obtain injunctive relief without presenting any evidence regarding the reactions of consumers to the representations made by the defendant." Whatever the merits of this statement of possibility (notwithstanding the use of the word "may" and the fact that such pontification was not central to the court's holding), the Sixth Circuit has made clear that in a claim for false advertising, even one seeking injunctive relief, "[a]lthough plaintiff need not present consumer surveys or testimony demonstrating actual deception, it must present evidence of some sort demonstrating that consumers were misled." *Podiatric Physicians*, 185 F.3d at 618. Wayne-Dalton has not done so in this case.

numerous reasons Amarr thought Lowe's should choose its doors, Amarr represented on four pages that its entire line of doors were "pinch resistant."[7] (Doc. No. 136, Ex. I at A2685, A2686, A2693, A2708.) In Wayne-Dalton's view, it is reasonable to infer that Lowe's chose to sell more of Amarr's doors instead of Wayne-Dalton's doors based upon the portion of the powerpoint presentation indicating that Amarr's doors were "pinch resistant." Wayne-Dalton's entire theory of all of Amarr's advertisements' tendency to deceive rests upon this inference. Wayne-Dalton does not offer any evidence that any of the other Amarr advertisements (those other than the powerpoint presentation) deceived Lowe's into purchasing Amarr's doors. It does not offer any testimony that Lowe's used any of the advertisements as a basis upon which it decided to use Amarr doors. Nor does it offer any evidence that anyone from Lowe's ever even saw these advertisements. It bases its entire argument regarding the tendency of Amarr's advertisements to deceive customers upon the temporal proximity of the powerpoint presentation to Lowe's decision to sell more Amarr doors instead of Wayne-Dalton doors. Thus, as an initial matter, any claim based upon the advertisements other than the powerpoint presentation must fail for lack of any proof of tendency to deceive.

Additionally, the Court finds that Wayne-Dalton has failed to carry its burden with regard to the powerpoint presentation. The Sixth Circuit distinguishes the requirement of showing a tendency to deceive when seeking injunctive relief from the actual consumer deception that must be shown to recover damages for false advertising. This distinction recognizes that evidence of actual consumer deception is often difficult to obtain, and may

---

[7] It should be noted that while Wayne-Dalton now relies upon this evidence to show a tendency to deceive, it did not argue at summary judgment regarding its claim for damages that such evidence illustrated the actual consumer deception required to sustain a claim for damages based upon false advertising. Wayne-Dalton's position then was that it need not show any deception because it had proved literal falsity. Additionally, Wayne-Dalton did not argue in response to Amarr's motion for summary judgment that it had sufficient evidence of actual deception to sustain a prima facie case. Nor did it do so in its motion for reconsideration. Its position was that it did not have to show such evidence. The Court rejected Wayne-Dalton's position and found that it was required to show actual deception, and because it had not offered any such evidence, summary judgment was warranted.

require elaborate consumer surveys that may or may not suffice. *See Balance Dynamics*, 204 F.3d at 692; *Johnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharm., Inc.*, 19 F.3d 125, 137 (3d Cir. 1994). In this case, however, consumer reaction evidence would not be difficult to obtain. The sole customer that Wayne-Dalton alleges was deceived is Lowe's, a current customer of both parties that surely was available to provide discovery. Wayne-Dalton chose not to submit any evidence of how any Lowe's personnel viewed the advertisement or whether they were "tricked into believing an untruth" by the advertisements. Without this evidence, the only direct evidence in the record of how any consumers interpreted the "pinch resistant" advertisements is that of the dealers Amarr presented who understand "pinch resistant" to mean "safer than traditional garage doors with regard to finger and hand pinching." Thus, contrary to Wayne-Dalton's position, the record does not support the conclusion that Lowe's was deceived by the advertisements. (Doc. No. 30, ¶5; Doc. No. 32, ¶ 5.)

Despite the complete lack of direct evidence, Wayne-Dalton argues that the tendency of the advertisements to deceive is illustrated by Lowe's decision to purchase more of Amarr's doors following Amarr's powerpoint presentation advertising them as "pinch resistant." While using broad language in describing the requirement as merely showing a "tendency to deceive," the Sixth Circuit has nevertheless been skeptical of such claims when they are based on highly speculative evidence of alleged tendency to deceive.

In *Miller*, 270 F.3d at 323, Herman Miller, a furniture company, sued Palazzetti Imports and Exports, another furniture company, claiming in part that Palazzetti's advertisement of its chairs was misleading and could cause customers to believe Palazzetti was offering original chairs produced by Herman Miller. Herman Miller produced evidence of two customer letters to Palazzetti referring to the chairs by the Herman Miller's chair's name, and testimony of a Herman

11

Miller employee who was asked by a customer whether Herman Miller's chair was the same as one the customer had seen in Palazzetti's showroom. *Id*. The district court granted judgment as a matter of law on the false advertising claims due to lack of evidence of deception or tendency to deceive, and the Sixth Circuit affirmed. The court explained that, where the evidence gave no indication whether the consumers thought they had actually purchased original items rather than reproductions, the evidence, at best, showed some confusion among three customers but failed to show that consumers were actually deceived by the advertising or that the advertisements had a tendency to deceive consumers. *Id*. at 323-34. *See also Podiatric Physicians*, 185 F.3d at 618 (affirming district court's denial of injunctive relief because, although letters suggesting confusion provided "some evidence of deception generally, [the evidence] does little to prove that [. . .] the entities plantiffs claims are its Lanham Act consumers were deceived by the [defendant's] statements"). The Sixth Circuit's decisions make clear that courts should avoid enjoining parties from advertising their products merely because they used ambiguous language where the evidence does not show that such language has a tendency to deceive consumers. *See Miller*, 270 F.3d at 323; *Podiatric Physicians*, 185 F.3d at 618.

As in *Podiatric Physicians* and *Miller*, the Court finds that Wayne-Dalton's evidence does not show that Amarr's advertisements tended to deceive Lowe's or any other customer into purchasing Amarr doors. In fact, the record is replete with evidence of Lowe's dissatisfaction with Wayne-Dalton's poor customer service (Doc. No. 105, Exs. 1, 3, 5, 7, 9, 12,

13, 16, 17, 20, 22, 24, 25, 26, 27, 28, 30, 31, 32, 33, 34, 35, 36[8], 38[9], 39[10], 41, 44, 45[11], 47[12]) and admissions of Wayne-Dalton executives indicating that Lowe's chose to increase Amarr sales instead of Wayne-Dalton sales due to Amarr's better capabilities to perform certain types of installations. (Doc. No. 140, Ex. C at 102-03; Doc. No. 105, Ex. 39.) This transforms what is, in isolation, a very weak inference of a tendency to deceive supported by highly circumstantial evidence into a wholly unreasonable one. Placed in proper context, Lowe's decision to purchase more Amarr doors in lieu of Wayne-Dalton doors is explained fully by factors unrelated to the allegedly deceptive advertising. Under the circumstances, any inference that Lowe's was somehow deceived into choosing Amarr doors over Wayne-Dalton doors based solely on the temporal proximity of Amarr's presentation with Lowe's decision to buy the doors is wholly speculative and unreasonable.[13]

Because Wayne-Dalton does not offer even a mere scintilla of evidence of the tendency of Amarr's advertisements to deceive Lowe's or any other consumer, none of the advertisements provide the basis for granting Wayne-Dalton injunctive relief. *Podiatric Physicians*, 185 F.3d at 618. *See also Pizza Hut v. Papa John's Int'l*, 227 F.3d 489, 503-04 (5th Cir. 2000) ("To prove a tendency to deceive, plaintiffs need to show that at least some consumers

---

[8] In this e-mail, a Lowe's area installation manager wrote "we are having a lot of problems . . . with Wayne-Dalton and that is the main reason sales are down. I explained the situations we are running into with Wayne Dalton and their lack of good customer service."

[9] In this e-mail, one Wayne-Dalton executive tells another "It is obvious that Lowes could care less [sic] about differet ion [sic] of product – they cannot sell [. . .] pinch resistance or free foam stop. We must begin to think based on what Lowes [sic] is doing or the direction they are headed vs. where we have been."

[10] In this e-mail, Wayne-Dalton's president wrote regarding Lowe's decision following the line review that he thought Lowe's blamed Wayne-Dalton and Holmes, another garage door manufacturer, for the poor reaction to Lowe's installation programs, and that "the only program that looked good or carried no scars was Amarr" which offered advantages to its installations over Wayne-Dalton's.

[11] This exhibit is an e-mail from Lowe's merchandise director telling Wayne-Dalton executives, "I am seeing an [sic] large disparity in the level of service between WD and other vendors that provide a more dense coverage [of territory managers]."

[12] This exhibit is an e-mail from a Wayne-Dalton executive explaining, "Lowes cited the Amarr install lead times as one of the reasons they were switching to them."

[13] Indeed, even if Lowe's chose to buy the doors because they were advertised as pinch resistant, Wayne-Dalton has presented no evidence that Lowe's understood pinch resistant to mean the doors would not allow a person to intentionally insert a fingertip between the door's sections.

were confused by the advertisements.").

### 1. Equitable Considerations Do Not Warrant a Permanent Injunction

Beyond failing to show success upon the merits, the Court also finds that Wayne-Dalton has not shown that the Court should exercise its equitable discretion to issue a permanent injunction. After Wayne-Dalton filed this lawsuit, it issued press releases detailing its claims of false advertising. It sent them to Amarr customers, and posted them on its website. In addition, a Wayne-Dalton representative met with a representative of Lowe's. Despite this publicity surrounding Wayne-Dalton's allegations that Lowe's was deceived by Amarr's advertisements, Lowe's has continued to purchase and resell Amarr's doors. Meanwhile, Amarr has told its dealers and customers to cease advertising its doors as "pinch resistant" so as to avoid further litigation. Where Amarr has voluntarily ceased the attacked advertisement, the Court finds that a remedy at equity is unwarranted. *See Iams Co. v. Nutro Prods.*, No. 3:00CV566, 2004 U.S. Dist. LEXIS 15134 at *17-18 (S.D. Ohio July 3, 2004) ("Equity will not enjoin conduct which has been voluntarily terminated and where there is no threat of resumption."). Indeed, although Amarr has long since stopped advertising its doors as pinch resistant and Wayne-Dalton notified Lowe's of the alleged false advertising, Lowe's continues to purchase Amarr's doors. This fact undermines the argument that Lowe's continues to be deceived by Amarr's allegedly false advertising, such that Wayne-Dalton continues to suffer an injury which cannot be compensated by damages if Wayne-Dalton adequately proved such a claim. Further, although Wayne-Dalton demands an injunction ordering Amarr to send out notices to all of its customers that its doors may fail the DASMA 116 standard (a standard both the Court and DASMA previously recognized as ambiguous), DASMA amended, or at least clarified, the DASMA 116 standard after Amarr last advertised its doors as pinch resistant. Thus, any injunctive relief requiring

corrective advertising regarding DASMA 116 would be confusing and would not serve the purposes of equity. Thus, Wayne-Dalton has not shown that a permanent injunction is warranted in this case.

## IV. CONCLUSION

For the foregoing reasons, Amarr's brief in opposition to Wayne-Dalton's requests for permanent injunctive relief (Doc. No. 171), construed as a motion for summary judgment, is hereby **GRANTED**. Wayne-Dalton's brief on injunctive relief (Doc. No. 172), construed as a motion for summary judgment, is **DENIED**.[14]

**IT IS SO ORDERED.**

Dated:  August 14, 2008

                                        **HONORABLE SARA LIOI**
                                        **UNITED STATES DISTRICT JUDGE**

---

[14] In a judgment entry filed contemporaneously with this memorandum opinion and order, the Court enters final judgment on the claim for false advertising and certifies the issue for appeal.